

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 25, 2021

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT DIAL SPARKS, | § | CASE NO. 20-50079-rlj11V |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER

### I.

The debtor, Robert Sparks, asks that the Court approve his "purchase" from the bankruptcy estate of the "Home Place," a 160-acre tract (with a residence) in Parmer County, for $170,000, and of certain items of "personal property"—including "Ivy Investments" for $24,436.80, "money on deposit" of $15,656.81, and two vehicles valued at $22,000—for $77,793.61.[1]  The appraised value of the Home Place is $180,000, but, as the owner (and now the purchaser) of the property, Sparks avoids a realtor (and the commission) and proposes to give himself a $10,000 discount.  The sale is a cash deal.

Sparks previously sold his homestead, a house on 79th Street in Lubbock, Texas, and,

_____
[1] The "personal property" also includes an undivided interest in a home in Bovina, Texas.

1

after paying off the mortgage holder, realized approximately $347,000 in proceeds; this sale took place in late February 2021. He wants to use these funds for the purchase of the Home Place and the personal property. He would then, presumably, claim the Home Place as his new homestead.

City Bank, a large unsecured creditor of Sparks's, opposes Sparks's proposal. It says it is owed in excess of $400,000 and raises several objections. The bank insists that the $347,000 from the sale of Sparks's homestead are *conditionally* exempt because under the "Texas Proceeds Rule," proceeds from the sale of a homestead lose their exempt status if not reinvested into another homestead within six months of the sale. ECF No. 104 (citing *Wiggains v. Reed (In re Wiggains)*, 535 B.R. 700, 709 (Bankr. N.D. Tex. 2015)). This means, according to City Bank, that proceeds *not* reinvested into another homestead—here the $78,000 for the personal property and the remaining $99,000—lose their exempt status. As a result, the bank argues, Sparks, as a debtor in bankruptcy, must dedicate the excess proceeds for payment to his unsecured creditors. *Id*. (citing *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384 (5th Cir. 2014); *Garcia v. Bassel (In re Garcia)*, 507 B.R. 907, 914 (N.D. Tex. 2014)). Having sold his homestead in late February 2021, the exempt status of the $347,000 expires in late August 2021.

Sparks should not, according to City Bank, be allowed to "buy non-exempt personal property with his homestead proceeds." ECF No. 104 ¶ 14. The bank suggests that the Court require Sparks to market and sell the personal property in a true market-based sale. This would eliminate all suspicions raised by Sparks being the decision-maker on both sides of the deal. Last, City Bank contends that Sparks should not benefit personally by discounting the sale of the Home Place by $10,000; the $10,000 should go to the creditors.[2]

---

[2] The bank's argument makes sense only if Sparks does *not* intend to pay the $10,000 in "savings" to his creditors.

II.

The Court agrees with City Bank's analysis of the always perplexing law that governs Texas homesteads.[3] But the question here is whether Sparks's two "purchases"—of the Home Place and of the personal property—should be allowed. For this, any advantage that Sparks has from dictating both sides of each deal must inure to the bankruptcy estate's benefit. Sparks must act selflessly for the benefit of his creditors. The creditors should receive the additional $10,000 that Sparks is proposing he save from his purchase of the Home Place. A seller in an arms-length transaction does not turn down an additional $10,000. If the sales price is increased to $180,000, the Court will approve Sparks's purchase, assuming he still wishes to go forward with the deal.

The $78,000 for the personal property is more complicated. Outside of bankruptcy, Sparks is free to spend any portion of the exempt proceeds as he wishes. But in bankruptcy, he must be mindful of his unsecured creditors. Under his chapter 11 plan, he must, at a minimum, pay his creditors at least as much as they would receive under chapter 7. 11 U.S.C. § 1129(a)(7). Sparks, through counsel, says that the $78,000 "will be accounted for in the distribution proposed to be made to unsecured creditors in [his] Plan . . . as (and to be) amended." ECF No. 105 ¶ 8. But this statement alone is not sufficient. Actual funds are the best form of assurance

---

[3] The Fifth Circuit in *In re Frost* said:

> Once a new homestead is purchased—even if the six month exemption has not expired—any surplus proceeds from the sale lose their exempt status and can be used to satisfy claims of the estate. This is because once a new homestead has been purchased, the funds become proceeds from the sale of a *former* homestead, which fall outside the protection of the Texas statute. If exempted funds can lose their statutorily-mandated exempt status within the six month window because they are transformed into proceeds of a *former* homestead, then so too can a homestead lose its exemption when it becomes a "former homestead" or "homestead proceeds."

*In re Frost*, 744 F.3d at 388 (emphasis in original) (citations omitted). *In re Frost* concerned a chapter 13 case. But it is worth noting that, as counsel for City Bank pointed out, chapters 13 and 11 contain near identical provisions, 11 U.S.C. §§ 1115 and 1306, providing that estate property includes all property acquired after the case is filed but before it is closed.

for creditors. The Court must be satisfied that, as required by the Bankruptcy Code, the value of the non-exempt property to be purchased goes to the unsecured creditors. On the record here, and as presently proposed, the Court cannot approve Sparks's use of the $78,000 of conditionally exempt proceeds for purchase of the personal property from (and thus taking out of) the estate.

It is, therefore, ORDERED as follows:

1. Sparks's purchase of the Home Place is approved if the purchase price is increased to $180,000; and

2. Sparks's purchase of the "personal property" is denied.

### End of Memorandum Opinion and Order ###